**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD SHERDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 07-cv-1006 |
| | ) | |
| CELLULAR ADVANTAGE, INC. d/b/a | ) | Judge Robert M. Dow, Jr. |
| ANSWER WIRELESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant's motion for summary judgment [39] and Plaintiff's motion to strike all – or in the alternative, portions – of Defendant's Local Rule 56.1 statement of facts [47]. For the reasons set forth below, both motions are denied.

Plaintiff, Edward Sherden ("Sherden"), filed this lawsuit on February 21, 2007. Sherden's complaint alleges that Defendant, Cellular Advantage, Inc. d/b/a Answer Wireless, Inc. ("AWI"),[1] violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII" or "the Act") when it fired Sherden – yet, merely suspended another employee – for committing a workplace infraction. Both employees were accused of engaging in personal, unauthorized use of their employer's online shipping account. Sherden is African-American; the other employee is Caucasian. Sherden filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on January 12, 2006. (Pl. SOAF, Ex. K.) The EEOC issued a right to sue letter on December 16, 2006. (Answer ¶ 16.)

---

[1] U.S. Cellular was also named as a Defendant but was dismissed [12] pursuant to an oral motion by Plaintiff.

AWI's answer states that its actions were based on legitimate, non-discriminatory reasons. (*Id.* at 6.) Its motion for summary judgment invokes the familiar *McDonnell Douglas* burden-shifting framework, arguing (1) that Sherden cannot make out a prima facie case of discrimination and (2) that Sherden cannot show that the non-discriminatory reasons for Sherden's termination proffered by AWI are pretextual.

Sherden's motion to strike makes multiple objections to AWI's Local Rule ("L.R.") 56.1 Statement of Facts and argues that AWI's summary judgment motion should be denied as a result of the various defects. Because of the shaping role of L.R. 56.1 fact statements in resolving motions for summary judgment, the Court first addresses Sherden's motion to strike.

## I.     Plaintiff's Motion to Strike Defendant's L.R. 56.1 Statement is Denied

A party who wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement. See, *e.g.*, *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 639-40 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id.* at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)). Indeed, it is the task of the Court, with or without a motion to strike, to review statements of material fact and to eliminate from consideration any arguments, conclusions, and assertions that are unsupported by the documented evidence on record yet offered in support of fact statements. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). The Court is capable of

redacting the statement of facts and disregarding interpretation or analysis of the facts, or unfounded assertions of fact found in the statement. The Court's scrutiny of fact statements applies equally to the party seeking summary judgment and to the party opposing it.

For example, testimony must be based on personal knowledge. See, *e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient"); Fed. R. Civ. P. 56(e). In addition, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. By way of illustration, a deposition transcript usually is not admissible at trial but may be used in support of summary judgment; however, a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition. See *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions * * * are admissible in summary judgment proceedings to establish the truth of what is attested or deposed").

Likewise, and pertinent here, where a party offers with its summary judgment materials a document that is referred to in an affidavit, the document must be admissible. "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2722, at 379-80 & 382-84 (1998)). To meet the requirements of Rule 56(e), a document that is referred to in an affidavit must be attached to the affidavit and be a "sworn or certified copy." Fed. R. Civ. P. 56(e)(1).

See also *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008); Fed. R. Evid. 803(6), 902(11).

Apparently aware of the instructions to litigants on the Court's website, – which informs parties that "[m]otions to strike all or portions of an opposing party's Local Rule 56.1 submission are disfavored"[2] – Sherden includes various objections within his Response to Defendant's Statement of Facts [46]. That is the preferred practice.[3] By including objections in its responses to fact statements, a party aids the Court in determining which facts are in dispute. The efficiency gains generally associated with summary judgment are served, and often are increased. Sherden's separate motion to strike, however, has less salutary effects. That is true as a general matter and particularly here, given that the objections in Sherden's separate motion are at once duplicative and less detailed than the objections submitted as part of Sherden's response.

In sum, the Court need not rule on the particulars of Sherden's motion to strike portions of AWI's L.R. 56.1 Statement of Facts because any statements or responses which contain legal conclusions or argument, are evasive, contain hearsay, are not based on personal knowledge, are irrelevant, are not supported by evidence in the record, are based on exhibits which have not been authenticated, and so forth, will not be considered by the Court in ruling on AWI's summary judgment motion. For the foregoing reasons, and consistent with the discussion above, the Court denies Sherden's motion to strike [47]. In resolving AWI's motion for summary judgment, the Court will rely only on compliant fact statements that are properly supported by

---

[2] See http://www.ilnd.uscourts.gov/home/Judges.aspx (follow "Judge Robert M. Dow Jr." hyperlink; then follow "Summary Judgment – Local Rule 56.1 Submissions" hyperlink).

[3] *Id.*

admissible[4] evidence. See Fed. R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 n.1 (N.D. Ill. 2007) (denying a separate motion to strike because the trial judge "did not rely on inadmissible evidence or statements that were not supported by the record"); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007).

One additional matter related to Sherden's motion merits further discussion, as it potentially touches upon the Court's jurisdiction. Sherden argues that the Court should strike Defendant's L.R. 56.1 Statement of Facts in its entirety because Defendant failed to include facts related to venue and jurisdiction. (Pl. Mot. ¶¶ 10-11.) Local Rule 56.1(a)(1)(B) directs a summary judgment movant to include "all facts supporting venue and jurisdiction in this court." Sherden argues that AWI has failed to comply with the rule. Nonetheless, the Court denies Sherden's motion to strike AWI's fact statement in its entirety: just as district courts have authority to demand strict compliance with L.R. 56.1 (*Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004)), they also have the power to forgive transgressions (*Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). The exercise of such discretion is appropriate in this case: Sherden's complaint alleges, and AWI's answer admits, that the Court has federal question jurisdiction over this matter[5] pursuant to Title VII, as well as 28 U.S.C. §§ 1331 and 1343. (Compl. ¶ 1; Answer ¶ 1.) Similarly, AWI has conceded that venue properly lies in this court, both because its answer admits as much and because

---

[4] Again, for purposes of summary judgment this means evidence which *represents* admissible record evidence.

[5] The Court does not construe Sherden's motion to strike as a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), based on the Court's lack of subject matter jurisdiction. Even as the plaintiff, Sherden certainly could file such a motion. See, notably, *Capron v. Van Noorden*, 2 Cranch 126, 126 (1804). In the event that the Court has construed Sherden's intent incorrectly, Sherden is invited to raise his concern by separate motion. So far as the Court can determine, however, jurisdiction over this Title VII case properly lies in this Court.

Federal Rule of Civil Procedure 12(h) prevents AWI from challenging venue at this stage of the litigation.  (Compl. ¶ 2; Answer ¶ 2.)

## II.    Facts

The Court takes the relevant facts primarily from the parties' respective Local Rule ("L.R.") 56.1 statements: Defendant's Statement of Facts ("Def. SOF") [41], Plaintiff's Response to Defendant's Statement of Facts ("Pl. Resp. Def. SOF") [46], Plaintiff's Statement of Additional Facts ("Pl. SOAF") [48], and Defendant's Response to Plaintiff's Statement of Additional Facts ("Pl. Resp. Def. SOAF") [53].[6]

AWI is headquartered in Iowa.  The company sells and services cellular phones and cellular products for U.S. Cellular Company.  It has stores in Iowa, Illinois, Nebraska, and Missouri – including several in the "Chicagoland area."  (Def. SOF ¶¶ 1-2.)[7]  There are twelve Chicagoland stores, including one in Schaumburg (*id.* ¶ 4), where the operative facts in this case

---

[6] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence.  See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000).  The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1.  See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).  Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement.  See, *e.g.*, *Malec*, 191 F.R.D. at 583.  Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact.  See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584.  The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."  *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).  In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts.  See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317).

[7] Plaintiff does not object to the underlying facts in these statements but complains that the affidavit in support of the statements, the Turco Affidavit (Def. SOF, Ex. 1), was not furnished prior to filing for summary judgment.  Plaintiff, however, has not stated which order of this court or rule of civil procedure was violated when Turco swore to an affidavit on October 9, 2008, which was then used to support a summary judgment motion that was filed on October 13, 2008.  The Court, therefore, considers the Turco Affidavit in these and subsequent fact statements.

took place (*id.* ¶ 22). The "area manager" for these stores is Rick Turco, who works in McHenry, Illinois. (*Id.* ¶ 3.) Sherden's store manager at the time of Sherden's termination[8] was Jake Faust. (*Id.* ¶¶ 23, 25.) The Schaumburg store was staffed with a manager and sales associates (*id.* ¶ 7), and there were five such sales associates around the time that Sherden was terminated (*id.* ¶ 26).

Sherden, who is an African-American male, was hired by AWI as a sales associate and started working in the Schaumburg store in April 2004. (Pl. Resp. Def. SOF ¶ 14.) The parties dispute whether Turco or the then-manager of the Schaumburg store hired Sherden. (*Id.* ¶ 15.) Sherden served a brief stint as a store manager in another store – which was brief for reasons that are both disputed and not pertinent to the issues raised by the parties – but then returned to Schaumburg for the remainder of his tenure. (See *id.* ¶ 20; Def. SOF ¶ 22.) In June 2005, Faust became the manager, and hence the person to whom Sherden reported. (Def. SOF ¶¶ 22, 23.)

The Schaumburg store had an online shipping account with the United Parcel Service ("UPS"). (Def. SOF ¶ 31.) Like the other Chicagoland stores, the Schaumburg store had an account number or login, and that account had a password. (*Id.* ¶ 31.) The login was the store's address and the password was the store's phone number. (*Id.* ¶ 31.) Generally, sales associates were not provided with the account codes, although exceptions were made, for instance, when a manager went on vacation. (*Id.* ¶ 31.) However, some record evidence also indicates that at least one employee (the proposed comparator in this case) was provided with the codes and that the employee understood that the codes could be used for personal use. (Pl. Resp. Def. SOF ¶

---

[8] The parties dispute whether Plaintiff was terminated or resigned voluntarily. (See, *e.g.*, Pl. Resp. Def. SOF ¶ 44.) Because that issue is not germane to Defendant's motion for summary judgment, however, the Court need not decide the issue and adopts Plaintiff's conception because the Court views the record in the light most favorable to the non-movant. (See also Turco Dep. at 99 ("[Faust] relieved [Sherden] of his duties, I guess you could say.").)

32; Munger Aff. ¶¶ 7-8.)[9]  Nonetheless, Sherden does not dispute that he understood that employees were not supposed to use the codes and that Faust was "the only one that was entitled to use the code[s]."  (Def. SOF ¶ 33; Pl. Dep. at 60.)

Sherden's understanding may have been based at least in part on company policy.  In its Employee Handbook,[10] AWI maintains a "Computer and Internet" policy.  That policy prohibits "[m]isuse of the computer passwords or accounts" and "attempt[s] to access unauthorized sites." (Pl. Resp. Def. SOF ¶ 12.)  The Handbook also states that dishonest or deceptive behavior may result in immediate discharge.  (Id. ¶ 13.)  Sherden was provided with a copy of the Handbook shortly after he was hired.  (Def. SOF ¶ 16.)

The events that led to the instant lawsuit occurred toward the end of 2005.  In December of 2005, Faust contacted Turco to tell him that he had seen "several packages waiting to go out to addresses that looked to be of a personal nature."[11]  (Id. ¶ 34.)  Faust and Turco discussed how

---

[9] Defendant objects to the use of the Munger Affidavit (Pl. SOAF, Ex. E), because it contradicts an earlier affidavit which Munger made in the EEOC investigation (see Def. SOF, Ex. 13) (the "EEOC Affidavit") and an email written by Munger (see id., Ex. 31).  There is no basis for excluding the Munger Affidavit based on the unsworn email.  *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 & n.9 (7th Cir. 1996) (statements to third parties are not a basis for excluding subsequent affidavits).  In this case, Munger alleges in his more recent affidavit that he was presented with the EEOC Affidavit, directed to sign it, and was not allowed to make changes.  (Munger Aff. ¶ 20.)  Moreover, Munger's more recent account is consistent with the deposition testimony of Shannon Carter.  There is, in short, ample basis for concluding that the Munger Affidavit is not a so-called "sham affidavit."  *Cf. Pries v. Honda Motor Co., Ltd*, 31 F.3d 543, 543-44 (7th Cir. 1994) (genuine issue for trial where plaintiff stated during a deposition that she had not worn a seatbelt during a crash when there was physical evidence corroborating the theory that she had been wearing a seatbelt).  Therefore, the Court considers the Munger Affidavit.

[10] Plaintiff objects that the Handbook has not been properly authenticated (Pl. Resp. Def. SOF ¶ 12); however, Defendant has attached an affidavit with its fact statement and exhibits (Def. SOF, Ex. 27), which authenticates the document.  Plaintiff further objects that the Handbook is not relevant.  That argument lacks merit.  Plaintiff raises a variety of relevance objections in its response, many of which do not jibe with the broad definition of relevance provided in the Federal Rules of Evidence.  See Fed. R. Evid. 401.  As with other objections, where the Court includes a statement of fact in this opinion despite an objection by one party, that objection is overruled.

[11] Plaintiff objects to the use of Turco's deposition testimony based on hearsay and lack of personal knowledge.  The objection is overruled: the Court concludes that Faust statements to Turco are admissible

8

to proceed, and Turco reviewed the UPS invoices for September, October, November, and December of 2005; the goal was to determine which employees were working on the days when the "suspicious" packages were sent. (*Id.* ¶¶ 35-38.) The review revealed that Sherden and Al Munger ("Munger") were the "common denominator:" one of the two was working on each of the days when a suspicious shipment was made. (*Id.* ¶ 38.) Turco told Faust that both employees would have to be interviewed. (*Id.* ¶ 39.) According to AWI, Turco told Faust that if "they were doing this intentionally" then they would have to be terminated (*id.* ¶ 40), although Sherden points to evidence suggesting that the element of intent was added only after the EEOC began its investigation (Pl. Resp. Def. SOF ¶ 40; Pl. SOAF, Ex. J, at 2).

Faust interviewed both Sherden and Munger. Faust first met with Sherden, on December 12, 2005. (Faust Dep. at 27-33.) Sherden admitted that he used AWI's UPS codes for personal benefit, and he was terminated. (Def. SOF ¶¶ 42-44; Pl. Resp. Def. SOF ¶ 42-44.) Sherden testified that up until his termination he got along "okay" with Faust and had only the "ordinary problems [with him that] you might have with a manager." (Def. SOF ¶ 48.)

Faust met with Munger the next day (December 13, 2005), as Munger had not been at work during the day on which Faust met with Sherden. (*Id.* ¶¶ 49-50.) In the meantime, Sherden had called Munger to inform him of what happened at his meeting. (Munger Aff. ¶ 10.) The evidence about what happened at the Munger meeting varies. In his affidavit, Munger claims that he admitted that he had been using the codes for over a year, that he knew what was going on because Sherden had called him, and that he "may have inadvertently used the codes because they were saved in Netscape." (*Id.* ¶ 11.) This generally comports with the recollections of another employee at the store: Shannon Carter testified that Faust had known

---

for the purpose of showing what was said to Turco, rather than as proof of the matter asserted. And, of course, Turco would have had personal knowledge of that which was said to him.

about Munger's use of the account codes for a lengthy period of time and would even joke about Munger's use of the codes. (See, *e.g.*, Carter Dep. at 75.) Carter testified that he had informed Faust in July 2005 – approximately five months before Faust suspended Munger and terminated Sherden's employment – that Munger was using the codes. (*Id.* at 86, 88.)

According to AWI, however, Faust *did not* know about Munger's unauthorized use of the codes (see, *e.g.*, Faust Aff. ¶ 27) and Faust's December 13, 2005 meeting with Munger went differently than the way Munger tells it. AWI says Munger was "shocked" when he was confronted with the allegations against him. (Def. SOF ¶ 50.) Munger then retrieved his[12] laptop computer and showed Faust how the computer "could save the passwords" (*Id.* ¶¶ 51-52), by showing Faust not the UPS website but personal websites like MySpace or Facebook. (Faust Dep. at 49-50.) Because Faust and Turco decided that Munger's usage had been accidental (*id.* at 52-53), they suspended him for three and a half days rather than firing him (Def. SOF ¶ 59). Turco explained the different treatment during his deposition: "Somebody admitted wrongdoing, and somebody else had an explanation for what happened." (*Id.* ¶ 60; Turco Dep. at 121.) Race had nothing to do with it. (Def. SOF ¶ 71.)

Besides race, there were other possible differences between Munger and Sherden. For example, Munger outperformed Sherden in terms of sales performance. (*Id.* ¶ 72.) However, Defendant has conceded for purposes of its summary judgment motion – more accurately, AWI forfeited any countervailing argument – that the sole basis for Sherden's termination in

---

[12] The employees were allowed to bring in their own computers because there were too few computers at the Schaumberg store. (See Turco Dep. at 60.)

December 2005 related to the incident involving unauthorized use of AWI's online account with UPS.[13] (Pl. SOAF ¶ 19; Pl. Resp. Def. SOF ¶ 28; Faust Dep. at 34.)

There is a final factual issue about which the parties disagree, and which pervades the parties' briefing. The factual issue relates to whether Sherden was fired by Turco (the area manager) or Faust (the store manager). The record evidence is less than harmonious. (Compare, *e.g.*, Def. SOF ¶ 65, with Pl. Resp. Def. SOF ¶ 65.) For example, Turco stated that the decision to terminate Sherden was his alone. (Turco Dep. at 83.) Faust takes that position as well. (Faust Aff. ¶ 8.) Yet, AWI's initial response to the EEOC regarding Sherden's charge of discrimination stated that "[t]he decision to terminate Sherden, or permit him to resign, was made by Store Manager Jake Faust." (Pl. SOAF, Ex. J, at 5.) And at one point during Faust's deposition, he characterized the guidance that he had received from Turco as a "recommendation" (Faust Dep. at 60) rather than a directive. In addition, Faust apparently was able to offer Sherden a dispensation of sorts (Def. SOF 45) if Sherden was willing to take on some of Faust's responsibilities, and AWI does not point to record evidence indicating that this authority came from Turco, or that Turco was even informed that Faust made the offer. Therefore, and because the Court must construe the record in the light most favorable to the non-movant, the Court assumes for purposes of this motion that Faust terminated Sherden's employment.

---

[13] Defendant denied the pertinent fact statement, which states that the incident involving the codes was the sole basis for terminating Sherden. (See Pl. SOAF ¶ 19; Def. Resp. Pl. SOAF ¶ 22). The denial is both puzzling and improper. The denial was improper because Defendant did not cite supportive record evidence for the denial. What Defendant did cite was paragraph 8 of the Faust Affidavit, which supports Plaintiff's fact statement. See *id.* ("The decision to either terminate Sherden's employment, or allow him to resign * * * was solely due to his admitted intentional violation of company policy."). Moreover, Defendant's own statement of facts asserts precisely that which it now denies. (See Def. SOF ¶ 71 ("each decision was based *solely* on that employee's explanation for his conduct") (emphasis added).) Therefore, paragraph 19 of Plaintiff's Statement of Additional Facts is deemed admitted.

### III.  Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

There is no heightened standard for summary judgment in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in

employment cases. *Alexander v. Wisc. Dept. of Health and Family Svcs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases, and in such cases summary judgment is not appropriate. See *id*. Nevertheless, summary judgment in favor of the employer is hardly unknown, or for that matter rare, in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## IV.   Analysis

AWI bases its summary judgment motion on two principal arguments: (1) that Sherden cannot establish a prima facie case of discrimination because he cannot show that he was treated less favorably than a similarly situated employee outside of Sherden's protected class (Def. Mem. at 14) and (2) that Sherden cannot establish that AWI's non-discriminatory reasons for its actions were mere pretext (*Id*. at 22).

### A.   Title VII

Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   To prove a case of discrimination under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008).   Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence[14] to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent.   *Id*.; see also *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 794 (7th Cir. 2005)

---

[14] "Circumstantial evidence * * * may come in the form of suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group." *Dandy v. United Parcel Svc.*, 388 F.3d 263, 272 (7th Cir. 2004) (internal quotation marks and citation omitted).

(conceptualizing direct evidence as either a "smoking gun" or a "convincing mosaic"). In other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Svc., Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a prima facie case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a prima facie case of discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff successfully establishes a prima facie case, a rebuttable inference of discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Fane*, 480 F.3d at 538; *Essex v. United Parcel Svc., Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is a mere pretext. *Fane*, 480 F.3d at 538. To establish pretext, the plaintiff must adduce specific facts which show either that the defendant was motivated by a discriminatory reason, or that the defendant's explanation is unworthy of credence – essentially, that the defendant's explanation is a lie. See *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). The plaintiff can accomplish this by demonstrating that the

proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Velasco v. Ill. Dept. of Human Svcs.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Bd. of Sch. Commr's of City of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994).

### B.    AWI's Challenge to Sherden's Prima Facie Case Fails

Sherden has not tried to make out his case using the direct method of proof. Instead, Sherden relies on the indirect method of proof to establish his discrimination claims. For purposes of this motion, the parties do not dispute that Sherden is a member of a protected class, that he was meeting his employer's legitimate expectations, and that his termination was an adverse employment action. (Def. Mem. at 14.) The sole dispute between the parties is whether the fourth prong of the prima facie case is satisfied – that is, whether there were similarly situated employees outside of the Plaintiff's protected class who were treated more favorably. AWI argues that Munger, the proposed comparator, is not a valid comparator because (i) the different explanations given by the two employees mean that they are not similarly situated, (ii) Munger had six and a half months more experience than Sherden, and (iii) Sherden had a lengthier disciplinary file and poorer performance than Munger.

"The prima facie case, and specifically its fourth prong, [is] meant to identify situations where the 'actions taken by the employer * * * if unexplained, are more likely than not based on consideration of impermissible factors.'" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406 (7th Cir. 2007) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995)). The Seventh Circuit recently has stated that the similarly situated inquiry is a "flexible one" that considers "all relevant factors, the number of which depends on the context of the case." *Id*. at 405 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). This "*normally* entails a

showing that the two employees [(1)] dealt with the same supervisor, [(2)] were subject to the same standards, and [(3)] had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Radue*, 219 F.3d at 617-18); *cf. Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) ("An employee is similarly situated if the employee is comparable to the plaintiff in all *material* respects") (internal citations omitted).

Regarding the relevant factors, "an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue*, 219 F.3d at 618. The "purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable." *Humphries*, 474 F.3d at 405. "The inquiry simply asks whether there are sufficient commonalities between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.*

The arguments made by AWI relate only to the third typically-considered factor in the similarly situated analysis – whether Munger and Sherden engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish AWI's treatment of them. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 688 (7th Cir. 2007). The first argument that AWI makes is that the different explanations offered by the two employees render Munger and Sherden dissimilarly situated. The argument fails because there is a genuine, "he said, she said" dispute about what Faust knew and when he knew it. *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) (reasoning that summary judgment "is a singularly inappropriate time to resolve" a "he said, she said" dispute). Sherden

has introduced evidence that Faust knew about Munger's unauthorized use of the shipping codes for an extended period of time and did nothing about it. (Munger Aff. ¶ 11; Carter Dep. at 75, 88.) And although AWI supports with record evidence both its version of Munger's reaction to the allegations of wrongdoing (shock) and Faust's degree of knowledge of the alleged misconduct prior to December 2005 (none), it is not the Court's role to decide on summary judgment which version of events should be credited. The Title VII plaintiff's burden in setting out his prima facie "is not onerous." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Like AWI's first argument, its final two arguments speak to whether there are differentiating or mitigating circumstances relating to the employees' conduct which render the two employees dissimilarly situated. Those arguments are that Munger had "greater seniority and experience" by six and a half months and that Munger outperformed, and presented far fewer disciplinary problems than, Sherden. (Def. Mem. at 20.) The Court concludes that the arguments, and the differences that they identify, do not bear on the similarly situated analysis in this case. As an initial matter, AWI conceded for purposes of summary judgment that the different explanations which Sherden and Munger provided to Faust furnished the sole basis for treating one employee differently than the other. (*Ante*, at note 13 and accompanying text.) The error (if error it was), is not ameliorated by AWI's failure to indicate even in its briefs that AWI actually considered Munger's lengthier service, superior performance, or slimmer disciplinary file in deciding to dismiss Sherden and suspend Munger. If the differences cited by AWI were not actually considered by AWI, then they are not material for purposes of the similarly situated analysis. See *Warren*, 516 F.3d at 631 (7th Cir. 2008) (appeals court would consider a proffered explanation for an adverse action "so long as the employer consider[ed] [the explanation] when

making the [adverse] decision"); *Peirick*, 510 F.3d at 687 n.1, 688 (excluding from consideration, as part of the similarly situated analysis, a distinction that was "routinely disregarded" by the employer).

As discussed above, Sherden need not show that Sherden and Munger were similar in *all* respects, as AWI contends; what matters is that the plaintiff and comparator be similar in all *material* respects. *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). Not every distinction matters; what the Court is looking for are distinctions that make a difference. The "commonsense" nature of the similarly situated inquiry asks the district court to determine "whether there are sufficient commonalities on the *key variables* between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination * * *." *Humphries*, 474 F.3d at 405 (emphasis added); see also *Radue*, 219 F.3d at 619 (the question is whether the "distinctions were substantial enough to account for the different treatment [the plaintiff] claims he received"). Yet, when a party concedes that a single variable fully explains the disparate treatment of two employees, a district court is readily able to determine the "key variables" because the parties have already identified which "distinctions were substantial enough to account for the different treatment." *Radue*, 219 F.3d at 619.

For the above reasons, the Court rejects AWI's argument that Sherden and Munger are not valid comparators.

### B. Sherden Has Presented Evidence that AWI's Stated, Legitimate Reasons Amount to Pretext

As noted, once the defendant provides a legitimate, non-discriminatory explanation for the actions that it took, the burden of production shifts back to the plaintiff to prove that the proffered justification is a mere pretext. *Fane*, 480 F.3d at 538. The plaintiff can do this by

adducing specific facts which show either that the defendant was motivated by a discriminatory reason, or that the defendant's explanation is unworthy of credence. See *Zaccagnini*, 338 F.3d at 676. The plaintiff can accomplish this by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Velasco*, 246 F.3d at 1017; *Cliff*, 42 F.3d at 412.

AWI seeks summary judgment based on two arguments related to pretext. First, it argues that Sherden cannot show that the non-discriminatory explanations offered by *Turco* amount to pretext. Second, according to AWI, even if Sherden can show that Turco's explanations are pretextual, Sherden cannot show that "it was [Turco's] *intent* to treat Sherden differently than Munger because of his African-American race." (Def. Mem. at 23.) Both arguments prove deficient, one as a factual matter and the other as a pure matter of law.

AWI's first argument is that Plaintiff cannot establish that Turco's reasons for terminating Sherden were pretextual. Obviously, the argument relies on the premise that Turco was the person responsible for Sherden's firing. As noted above, however, there is conflicting record evidence as to whether Turco or Faust was responsible for firing Sherden. Because of this dispute, and the summary judgment framework, the Court must assume for purposes of resolving AWI's motion that Faust terminated Sherden's employment. AWI's reply brief fails to cure the omission.

And with respect to *Faust*'s explanation for firing Sherden and retaining Munger, the Court already has discussed the record evidence that indicates that Faust knew as early as July 2005 that Munger was using the UPS codes for his personal shipping needs.[15] The same

---

[15] As a conceptual matter, the analysis for the prima facie case and the pretext analysis merge in this case. Such conceptual merger may occur in Title VII cases when the same record evidence speaks to different parts of the *McDonnell Douglas* framework. See, *e.g.*, *Peirick*, 510 F.3d at 687 (noting that, because of

evidence that Sherden points to in making out his prima facie case also supports the argument that Faust's explanation for the different treatment of Munger and Sheridan "is unworthy of credence" (see *Zaccagnini*, 338 F.3d at 676), which presents an issue for a trier of fact rather than the Court on summary judgment.

AWI's second argument is that Sherden has not demonstrated that AWI's "true motivation was in fact discrimination." (Def. Mem. at 14.) However, a plaintiff at the summary judgment phase need only present evidence that the employer's nondiscriminatory explanation is not credible. A plaintiff is not required, at this phase of the litigation, to show that any pretext was a mask for discrimination. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (stating that it is permissible for a fact finder to infer discrimination based "on the falsity of the employer's explanation" and noting that proof that an employer's explanation is unworthy of credence "may be quite persuasive"); *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006) ("To survive summary judgment, * * * the plaintiff need only offer evidence that supports an inference that the employer's nondiscriminatory reason for its action was dishonest."). Because Sherden has marshaled evidence that, if credited, would undermine the credibility of AWI's nondiscriminatory explanation, "the issue of whether [AWI] discriminated against [Sherden] is to be determined by the jury." *Rudin v. Lincoln Land Comty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005) (discussing the implications of the Supreme Court's holding in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

In sum, because Sherden has presented evidence which could give rise to an inference that the explanation offered by *Faust* for Sherden's dismissal amounts to mere pretext, AWI's

---

the argument made by the plaintiff, two parts of the *McDonnell Douglas* framework "seemingly merge[d]").

first argument fails. AWI's second argument fails because it demands more of Sherden than does the *McDonnell Douglas* framework in surviving a motion for summary judgment.

## V.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [39] and Plaintiff's motion to strike Defendant's Statement of Facts [47] are denied.

Dated: June 9, 2009

_____
Robert M. Dow, Jr.
United States District Judge